UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **NASDAQ, INC.**<br><br>                    **Plaintiff,**<br>v.<br><br>**EXCHANGE TRADED MANAGERS GROUP, LLC,**<br>**ETF MANAGERS GROUP, LLC, AND**<br>**SAMUEL MASUCCI**<br><br>                    **Defendants** | **CIVIL ACTION NO.** _____ |

## COMPLAINT

Plaintiff Nasdaq, Inc. ("Nasdaq") alleges as follows:

## SUMMARY OF THE ACTION

1.    Beginning in 2012, Nasdaq, Inc.'s predecessor in interest, International Securities Exchange ("ISE") partnered with PureShares, LLC d/b/a PureFunds (hereinafter "PureFunds") to develop and launch a line of exchange-traded funds ("ETFs") under the PureFunds brand.[1] ISE and PureFunds then hired defendants Exchange Traded Managers Group, LLC, ETF Managers Group, LLC ("ETFMG") (collectively the "ETFMG Defendants"), and Samuel Masucci, to operate these ETFs. The business arrangement was simple: ISE paid the ETFMG Defendants to run the day-to-day operations of these ETFs and the ETFMG Defendants were contractually required to convey to ISE (and post-acquisition, Nasdaq) and PureFunds the profits generated from the operation of these funds.

---

[1] An ETF is a security that, like a mutual fund, tracks an index, a commodity, bonds, or a basket of assets like an index fund. Unlike a mutual fund its price changes throughout the day based on the value of the assets it is comprised of. *See* Compl. ¶¶ 14-18.

2.      From 2012 to 2017, ISE and Nasdaq, spent millions of dollars to develop, launch, market, and operate the PureFunds line of ETFs, and through this investment, grew the PureFunds line of ETFs into an asset worth tens of millions of dollars.

3.      By 2017, three of these ETFs were making significant amounts of money. Indeed, the PureFunds ISE Cyber Security ETF (ticker symbol: HACK and hereinafter referred to as "HACK") has more than $1 billion in assets under management (i.e., money invested in the ETF) and generates profits of more than $300,000 a month for Nasdaq and PureFunds.

4.      Defendants were not content to simply receive payment for operating these funds. Beginning in late 2016, they initiated a scheme to take Nasdaq's property – the PureFunds line of ETFs – and keep the profits. To effectuate this plan the ETFMG Defendants fabricated frivolous legal claims that they used to terminate their agreements with Nasdaq and PureFunds in an attempt to unlawfully steal the PureFunds ETFs.

5.      Nasdaq invested millions of dollars building the PureFunds line of ETFs into a valuable asset that produced hundreds of thousands of dollars in profits a month. Through their unlawful actions defendants have caused Nasdaq substantial economic harm.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction of this action under 28 U.S.C. § 1332 because:

   A.   Plaintiff Nasdaq is a Delaware corporation, with its principal place of business located at One Liberty Plaza, New York, New York;

   B.   Defendant Exchange Traded Managers Group, LLC is a New Jersey limited liability company, with its principal place of business located at 30 Maple Street, Second Floor, Summit, New Jersey;

      C.      Defendant ETF Managers Group, LLC is a New Jersey limited liability company, with its principal place of business located at 30 Maple Street, Second Floor, Summit, New Jersey;

      D.      Defendant Samuel Masucci is an individual residing in, and a citizen of, the State of New Jersey;

      E.      There is complete diversity of citizenship between Plaintiff and Defendants; and

      F.      The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

7. Venue in this District is proper under 28 U.S.C. § 1391 because Nasdaq is headquartered in the Southern District of New York, and because Defendants transact business in the Southern District of New York. Additionally, the contracts at issue in this case – the Index License and Exchange-Traded Product Agreement and the Sublicense Agreement – both contain a forum selection clause requiring that "any legal action, proceeding, controversy or claim between the parties arising out of or relating to this Agreement may be brought and prosecuted only in the United States District Court for the Southern District of New York or in the Supreme Court in and for the County of New York . . . ."

## THE PARTIES

8. Nasdaq, Inc. is a publicly-traded Delaware Corporation, headquartered in New York City. Nasdaq owns the second largest stock exchange in the world and provides a variety of other financial services. In 2016, Nasdaq acquired International Securities Exchange, including its business developing and marketing various ETFs. As part of this acquisition Nasdaq acquired all the assets, investments, and intellectual property owned by ISE.

9. Exchange Traded Managers Group, LLC is a New Jersey business, headquartered in Summit New Jersey. Exchange Traded Managers Group is the corporate parent to ETF Managers Group, LLC and ETFMG Financial, LLC. ETF Managers Group is the successor in interest to a number of companies previously owned and/or operated by defendant Samuel Masucci, including Gencap Advisors, LLC ("Gencap"), and Factor Advisors, LLC ("Factor").

10. ETF Managers Group, LLC ("ETFMG") is a New Jersey business, headquartered in New Jersey. ETFMG markets itself as a company that helps other companies launch their ETFs.

11. Samuel Masucci is the co-founder and CEO of Exchange Traded Managers Group and ETFMG, and a resident of New Jersey.

## RELATED ENTITIES

12. PureShares, LLC d/b/a PureFunds is a Delaware limited liability company with its principal place of business in New York. PureFunds develops and markets ETFs.

## INFORMATION ABOUT EXCHANGE-TRADED FUNDS

13. An exchange-traded fund, or ETF, is a marketable security that tracks an index, a commodity, bonds, or a basket of assets like an index fund. Unlike mutual funds, an ETF trades like a common stock on a stock exchange. ETFs experience price changes throughout the day as they are bought and sold.

14. ETF shareholders are entitled to a proportion of the profits, such as earned interest or dividends paid, that the ETF receives as a result of its ownership of the underlying assets. The ownership of the fund can easily be bought, sold or transferred in much the same was as shares of stock.

15.     The PureFunds ETFs track indexes that ISE created or licensed.  Index ETFs like these can cover U.S. and foreign markets, specific sectors, or a specific class of stock (i.e., small-caps, ADRs, etc.).  As described in this Complaint, the index ETFs in this case tracked specific industry sectors such as cyber security.

16.     Each ETF trades under a unique ticker symbol much like an individual stock or mutual fund.

17.     A given ETF, like a mutual fund, has a management fee, which represents the amount payable to the manager of the fund.  The typical ETF management fee is less than one percent of the fund's assets.

## FACTS

**ISE and PureFunds Conceive of the PureFunds Line of Funds**

18.     Beginning in 2012, ISE partnered with PureFunds to develop and market a line of ETFs that would be marketed under the PureFunds brand.

19.     To effectuate this relationship, on or about June 18, 2012, ISE and PureFunds entered into a contract titled the "Index License and Exchange-Traded Product Agreement" (hereinafter "the Index License Agreement").  A copy of the Index License Agreement and Schedule I (and its Supplements) are attached hereto as Exhibit A.[2]  This contract explicitly described its purpose: "PureFunds and ISE intend to develop certain exchange-traded products . . . ."

20.     Pursuant to this Index License Agreement, ISE was obligated to:

   A.     Grant PureFunds a license to use ISE's indexes and trademarks for various

          ETFs that PureFunds intended to create (Ex. A ¶ 1);

---

[2] The exhibits to the Complaint will be served on the defendants and provided to the Court, but have not been filed pursuant to certain confidentiality provisions contained in the exhibits.

      B.      Calculate the indexes so that investors would have real-time knowledge of the index and the corresponding ETF's value (Ex. A ¶ 2(B)); and

      C.      Provide financial support in connection with the creation, launch, and ongoing operation of the PureFunds ETFs (Ex. A ¶ 2(C)).

21. Pursuant to this Index License Agreement, PureFunds was obligated to take the necessary steps to launch the ETFs, and split the profits generated by each ETF with ISE. Ex. A ¶ 2(B) & Schedule I(1)(H), (2)(H), (3)(H), (4)(H), (5)(H), (6)(H), and 7(H).

22. Based on the Index License Agreement, ISE and PureFunds worked together to launch the following ETFs:

      A.      PureFunds ISE Junior Silver ETF (ticker: SILJ);

      B.      PureFunds ISE Cyber Security ETF (ticker: HACK);

      C.      PureFunds ISE Big Data ETF (ticker: BIGD);

      D.      PureFunds ISE Mobile/Electronic Payments ETF (ticker: IPAY);

      E.      PureFunds EE Electronic Gaming ETF (ticker: GAMR);

      F.      PureFunds Drone Economy Strategy ETF (ticker: IFLY); and

      G.      PureFunds ETFx HealthTech ETF (ticker: IMED).

23. The Index Licensing Agreement entitles ISE (and its successor Nasdaq) to 50 to 70 percent of the profits generated by the operation of each of the ETFs. Ex. A Schedule I(1)(H), (2)(H), (3)(H), (4)(H), (5)(H), (6)(H), and 7(H).

24. The Index License Agreement prohibits ISE or PureFunds from introducing products that were "Substantially Similar" to the ETFs the parties had partnered together to launch. In the event ISE or PureFunds introduces such a product, the Index License Agreement provides that the other party would be entitled to liquidated damages of $250,000, repayment of

all start-up costs, and all profits from the ETFs created pursuant to the Index License Agreement going forward.  Ex. A ¶ 3 & Schedule I(1)(I), (2)(I), (3)(I), (4)(I), (5)(I), (6)(I), and 7(I).

**ISE and PureFunds Hire ETFMG to Operate the Funds and Pay ISE/PureFunds the PureFunds ETFs' Profits**

25. Neither ISE nor PureFunds conduct the day-to-day operations of ETFs, so they hired the ETFMG Defendants to provide these services.

26. ETFMG markets itself as a private label ETF issuer that helps ETF "sponsors" such as ISE and PureFunds launch and operate their ETFs.  On its website ETFMG marketed its "mission":

> Revolutionize the exchange traded products marketplace empowering issuers to launch their unique ETF products with the support of a high end, controlled environment tailored to fit their needs.

Additionally, ETFMG's tagline was: "YOUR ETF.  YOUR WAY."

27. The Index License Agreement provides that PureFunds could, with ISE's written consent, grant a sublicense to a third-party to use ISE's indexes and trademarks.

28. Pursuant to this sublicense provision, ISE and PureFunds agreed to grant the ETFMG Defendants a sublicense to operate the PureFunds line of ETFs.  Accordingly, on or about December 2, 2015, ISE, PureFunds, and ETFMG entered into a "Sublicense Agreement," which:

    A.    Granted ETFMG a sublicense to use ISE's indexes and trademarks "in connection with the issuance, distribution, marketing and/or promotion" of the ETFs; and

    B.    Bound ETFMG to "all the provisions of the [Index License Agreement], including, without limitation, those provisions imposing any obligations on PureFunds."  Ex. B ¶ 2.

A copy of the Sublicense Agreement is attached hereto as Exhibit B.

29. By entering into the Sublicense Agreement, ETFMG explicitly "agree[d] that its obligations under the [Index] License Agreement . . . are as principal and shall be unaffected by any defense or claim that PureFunds may have against ISE, the licensee."  Ex. B ¶ 3. Accordingly, ETFMG is obligated to pay ISE (and its successor Nasdaq) 50 to 70 percent of the profits generated by the operation of each of the ETFs.  Until 2017, ETFMG generally complied with this obligation and paid ISE/Nasdaq the profits generated by the operation of the PureFunds ETFs.

**ISE/Nasdaq Pay ETFMG Substantial Fees to Manage and Operate the ETFs**

30. In addition to the Sublicense Agreement, ISE and/or PureFunds entered into various operating agreements with the ETFMG Defendants for most of the ETFs.

31. These operating agreements, each titled "SEC '40 Act Platform Services Agreement" (hereinafter "40 Act Agreements"), obligate ISE/Nasdaq to pay ETFMG for undertaking a variety of services related to each ETF, including: preparing prospectuses; paying listing fees; producing a website and marketing materials; making regulatory filings with the SEC; and handling tax reporting.  A copy of the: HACK 40 Act Agreement, is attached hereto as Exhibit C; BIGD and IPAY 40 Act Agreement, is attached hereto as Exhibit D; and IFLY 40 Act Agreement, is attached hereto as Exhibit E.

32. With limited exception, each 40 Act Agreement explicitly requires ETFMG to pay ISE/Nasdaq and PureFunds the profits generated from each fund within ten days of this money being made available to ETFMG.  This payment obligation for ETFMG is independent of ETFMG's obligation to pay Nasdaq the majority of the profits from the funds as required by the Sublicense Agreement.

33. Pursuant to these agreements, ISE/Nasdaq and PureFunds initially paid ETFMG approximately $30,000 to $50,000 to launch each fund, and more than $200,000 annually to operate each of the PureFunds ETFs that ETFMG managed on behalf of ISE/Nasdaq and PureFunds. *See, e.g.*, Ex. D (BIGD and IPAY 40 Act Agreement) at 11, 14.

34. On or about April 22, 2013, ISE/Nasdaq also entered into an agreement to pay the ETFMG Defendants to conduct wholesale marketing. This agreement, titled the "Wholesaling Platform Services Support Agreement" (hereinafter "Wholesaling Agreement"), obligated ISE/Nasdaq to pay the ETFMG Defendants to engage in wholesaling for ISE-supported ETFs (including the PureFunds ETFs) and third-party ETFs. Over the life of this contract, ISE/Nasdaq has paid the ETFMG Defendants and its predecessor hundreds of thousands of dollars. A copy of the Wholesaling Agreement, is attached as Ex. F.

35. Between the Index Licensing Agreement, the Wholesaling Agreement, and the 40 Act Agreements, ISE/Nasdaq spent millions of dollars to develop, launch, market, and operate the PureFunds ETFs.

**The SILJ, HACK, and IPAY ETFs Generate Substantial Profits for ISE/Nasdaq**

36. Through mid-2017, pursuant to its contractual obligations, the ETFMG Defendants operated the PureFunds ETFs for ISE/Nasdaq.

37. Through the course of this relationship, the only profitable PureFunds ETFs were HACK, IPAY, and SILJ.

38. HACK has been the biggest success of these funds and throughout 2017 has had approximately $1.2 billion in assets under management (i.e. money invested in the ETF).

39. HACK has generated substantial profits of more than $300,000 a month. Until the beginning of 2017, ETFMG has paid these profits to ISE/Nasdaq and PureFunds.

40. Through ISE/Nasdaq's investment, the PureFunds ETFs have developed into an asset worth tens of millions of dollars.

**The ETFMG Defendants Schemed to Take Nasdaq's Property and Profit Stream**

41. Beginning in early 2017, defendants initiated a scheme to take control of the PureFunds ETFs. This plan involved the ETFMG Defendants concocting frivolous reasons to terminate their agreements with Nasdaq and PureFunds and take control of the PureFunds ETFs.

42. On or about March 1, 2017, defendant ETFMG sent a letter to PureFunds' CEO warning him against "interfering" with the operations of the PureFunds' ETFs.

43. On April 21, 2017, defendant ETFMG sent another letter to PureFunds' CEO informing him that ETFMG was terminating the 40 Act Agreements for HACK, IMED, and IFLY because PureFunds' CEO stated publicly that PureFunds was the "issuer" of these PureFunds ETFs.

44. On May 24, 2017, defendant Masucci sent a letter to Nasdaq and PureFunds stating that ETFMG would no longer pay Nasdaq profits from HACK effective June 30, 2017, because:

    A. PureFunds' CEO "improperly" contacted third-parties related to the PureFunds ETFs;

    B. PureFunds' CEO continued marketing the PureFunds ETFs;

    C. Nasdaq's attorney sent an "inappropriately confrontational" letter to ETFMG;

    D. Nasdaq failed to propose a new contractual agreement for SILJ;

    E. PureFunds' CEO objected to a reduction in the HACK management fee;

    F. Nasdaq caused PureFunds to file a lawsuit against ETFMG;

   G. Nasdaq asked ETFMG to negotiate a business solution with PureFunds but was unable to reach an agreement;

   H. PureFunds filed a lawsuit against ETFMG; and

   I. As part of that lawsuit, PureFunds induced a third-party to publicly state that ETFMG was involved in a matter with the United States Securities and Exchange Commission.

  45. On June 2, 2017, defendant Masucci sent a letter to Nasdaq and PureFunds stating that ETFMG was terminating the 40 Act Agreements for HACK, IPAY, BIGD, and the other PureFunds ETFs in sixty days for the reasons listed in his letter of May 24, 2017.

  46. The ETFMG Defendants' assertion that the allegations set forth in the May 24, 2017 letter represent a material breach of the 40 Act Agreements is frivolous. The only logical conclusion that can be drawn from these actions is that defendants sought to seize control of the PureFunds ETFs and the profits they generate, and manufactured a means of achieving these goals.

  47. The ETFMG Defendants had no valid basis to terminate the 40 Act Agreements and their termination of these agreements was an unlawful breach. Accordingly, the ETFMG Defendants owe Nasdaq the millions of dollars in profits generated by the PureFunds ETFs that continues to accrue each month. Moreover, despite stating in the June 2, 2017 letter that these agreements would not terminate until the end of July 2017, at the time of the filing of this Complaint, ETFMG had still not paid Nasdaq the profits from the PureFunds ETFs for March 2017 – July 2017, totaling more than $1.2 million.

48. On or about July 30, 2017, the ETFMG Defendants informed Nasdaq that it was unilaterally renaming the following ETFs, as described below, that ISE/Nasdaq created and owned:

| FORMER NAME | NEW NAME | TICKER |
|---|---|---|
| PureFunds ISE Cyber Security ETF | ETFMG Prime Cyber Security ETF | HACK |
| PureFunds ISE Mobile Payments ETF | ETFMG Prime Mobile Payments ETF | IPAY |
| PureFunds ISE Junior Silver ETF | ETFMG Prime Junior Silver ETF | SILJ |
| PureFunds Video Game Tech ETF | ETFMG Video Game Tech ETF | GAMR |
| PureFunds Drone Economy Strategy ETF | ETFMG Drone Economy Strategy ETF | IFLY |
| PureFunds ETFx HealthTech ETF | ETFMG ETFx HealthTech ETF | IMED |

Despite changing the names of the ETFs, the ETFMG Defendants maintained the PureFunds ETFs' established and well-known tickers (such as HACK).

49. ETFMG also told Nasdaq that it would not comply with the Index License Agreement and Sublicense Agreement and refused to pay Nasdaq the profits generated by the operation of the PureFunds ETFs, as required by the Index License Agreement and the Sublicense Agreement.

**The ETFMG Defendants' Actions are a Breach of the Index License Agreement**

50. The Index Licensing Agreement and Sublicensing Agreement explicitly obligate ETFMG to pay Nasdaq at least 50 percent, 70 percent, and 65 percent of the profits generated from SILJ, HACK, and IPAY. ETFMG's failure to pay Nasdaq these profits is a clear breach of the agreements. Accordingly, the ETFMG Defendants owe Nasdaq the millions of dollars in profits generated by the PureFunds that continues to accrue each month.

51. The Index Licensing Agreement and Sublicensing Agreement also constrain ETFMG from creating "Substantially Similar" products to those created pursuant to those agreements. The ETFMG Defendants' creation of six Substantially Similar products obligates

them to pay Nasdaq liquidated damages and reimburse Nasdaq for the startup costs it incurred launching these products.

**The ETFMG Defendants Also Breached the Wholesaling Agreement**

52. The Wholesaling Agreement explicitly prohibits the ETFMG Defendants from operating as the distributor for any ETFs related to that agreement. Ex. H ¶ 3. From April 22, 2013 to April 1, 2017, the ETFMG Defendants complied with this provision. However, ETFMG announced that effective April 1, 2017 it would no longer be using an experienced third-party distributor, and would instead be using an Exchange Traded Managers Group subsidiary, also owned by defendant Masucci, ETFMG Financial LLC, for distribution services, despite that affiliate having no prior relevant experience. ETFMG's arrangement with ETFMG Financial LLC was not an arms-length transaction. This action was a material breach of the Wholesaling Agreement and was part of the ETFMG Defendants' comprehensive efforts to seize as much money generated by the PureFunds ETFs as possible.

53. The Wholesaling Agreement also carefully delineated what expenses ISE/Nasdaq was responsible for paying under the agreement. The ETFMG Defendants violated the agreement and then forced ISE/Nasdaq to pay, through impermissible set-offs, the following substantial expenses ISE/Nasdaq was not obligated to pay:

    A.    The Wholesaling Agreement required ISE/Nasdaq to reimburse the ETFMG Defendants for certain expenses provided that ISE/Nasdaq and the ETFMG Defendants agreed on those expenses in advance, and those expenses could not exceed $50,000 unless "agreed to in writing." Ex. F. at Exhibit A (Revenue Share). The ETFMG Defendants breached this provision and spent $102,000 and $131,000 in 2015 and 2016,

respectively on these expenses.  The ETFMG Defendants then deducted these amounts from money it owed ISE/Nasdaq under other contracts; and

    B.    The Wholesaling Agreement required ISE/Nasdaq to pay the salary and benefits for two wholesalers provided that that amount did not exceed $250,000.  Ex. F. at Exhibit C (Wholesalers).  The ETFMG Defendants breached this provision and spent $432,000 and $396,000 in 2015 and 2016, respectively on wholesalers.  The ETFMG Defendants then deducted these amounts from money it owed ISE/Nasdaq under other contracts.

54.    On July 11, 2017, Nasdaq informed ETFMG that it was terminating the Wholesaling Agreement unless ETFMG cured these breaches.  ETFMG refused.

**Nasdaq Has Suffered Substantial Economic Harm as a Direct Result of Defendants' Actions**

55.    ISE/Nasdaq invested millions of dollars in the development of the PureFunds ETFs through its payments under the Index License Agreement, the Wholesaling Agreement, and the 40 Act Agreements.  As a result of defendants' misappropriation of the PureFunds ETFs, Nasdaq will not recover this substantial investment.

56.    By the terms of the Index License Agreement and the 40 Act Agreements, Nasdaq is entitled to the majority of the profits for HACK, IPAY, and SILJ.  By their breach of this agreement, the defendants have misappropriated Nasdaq's prospective profits.

57.    By the terms of the Index License Agreement, Nasdaq is entitled to liquidated damages and repayment of the startup costs it incurred as a result of the ETFMG Defendants launching six "Substantially Similar" funds.

58.     The ETFMG Defendants breached the Wholesaling Agreement by acting as a distributor for the ETFs marketed under that agreement and requiring Nasdaq to pay more than $600,000 in expense reimbursements the ETFMG Defendants were not entitled to.

## CLAIM FOR RELIEF

### COUNT ONE (BREACH OF CONTRACT)
### (Against Defendants Exchange Traded Managers Group and ETFMG)

59.     Nasdaq re-alleges and incorporates by reference each and every allegation in paragraphs 1–58 inclusive, as if they were fully set forth herein.

60.     Nasdaq fully performed its obligations under the Index License Agreement. The ETFMG Defendants breached the Sublicense Agreement, that incorporated specific obligations from the Index License Agreement, by:

    A.  Refusing to pay Nasdaq the profits it is entitled to under the Index License Agreement and Sublicense Agreement; and

    B.  Creating products "Substantially Similar" to the products launched under the Index License Agreement and Sublicense Agreement.

61.     Nasdaq fully performed its obligations under the Wholesaling Agreement. The ETFMG Defendants materially breached the Agreement by failing to use a third-party distributor, and requiring Nasdaq to reimburse the ETFMG Defendants for over $600,000 in expenses Nasdaq was not obligated to pay.

62.     Nasdaq fully performed its obligations under the 40 Act Agreements. The ETFMG Defendants materially breached these agreements by refusing to pay Nasdaq profits it is entitled to.

63. As a result of the ETFMG Defendants' material breach of the Index Licensing Agreement and the Sublicense Agreement, the Wholesaling Agreement, and the 40 Act Agreements, Nasdaq has been damaged in the amount to be determined by a trier of fact.

## COUNT TWO (CONVERSION)
**(Against all Defendants)**

64. Nasdaq re-alleges and incorporates by reference each and every allegation in paragraphs 1–63, inclusive, as if they were fully set forth herein.

65. ISE/Nasdaq, along with PureFunds, created, marketed, launched, and sponsored the PureFunds line of ETFs. Indeed, ISE/Nasdaq spent millions of dollars investing in and developing these assets.

66. As described above, defendants misappropriated from Nasdaq the PureFunds ETFs.

67. By its unlawful actions the defendants have, intentionally and without authority, interfered with Nasdaq's right to these assets and the profits they generate in a manner so serious as to deprive Nasdaq of the use of those assets and profits.

68. Defendant Samuel Masucci exercised dominion and control over the ETFMG Defendants with respect to the misappropriation from Nasdaq of the PureFunds ETFs. Therefore, defendant Samuel Masucci acted as the alter ego of the ETFMG Defendants and is liable for the ETFMG Defendants' actions and debts.

69. As a result of defendants' conversion, Nasdaq has been damaged in the amount to be determined by a trier of fact.

## COUNT THREE (UNFAIR COMPETITION)
**(Against Defendants Exchange Traded Managers Group and ETFMG)**

70. Nasdaq re-alleges and incorporates by reference each and every allegation in paragraphs 1–69, inclusive, as if they were fully set forth herein.

71. The ETFMG Defendants engaged in comprehensive efforts to seize as much money generated by the PureFunds ETFs as possible.

72. The ETFMG Defendants misappropriated the PureFunds ETFs, Nasdaq's prospective profits, and Nasdaq's labor, skill, expenditures, and goodwill, and displayed bad faith in doing so.

73. Through the ETFMG Defendants' scheme, the ETFMG Defendants misappropriated Nasdaq's commercial advantage and engaged in unfair competition.

74. As described above, the ETFMG Defendants' scheme was wanton and malicious.

75. As a result of the ETFMG Defendants' unfair competition, Nasdaq has been damaged in the amount to be determined by a trier of fact.

## COUNT FOUR (UNJUST ENRICHMENT)
**(Against Defendants Exchange Traded Managers Group and ETFMG)**

76. Nasdaq re-alleges and incorporates by reference each and every allegation in paragraphs 1–75, inclusive, as if they were fully set forth herein.

77. Pursuant to the Index Licensing Agreement, the Wholesaling Agreement, and the 40 Act Agreements, Nasdaq provided significant and valuable benefits to the ETFMG Defendants in the form of payments Nasdaq made to finance the development, launch, marketing, and operation of the PureFunds line of ETFs.

78. The ETFMG Defendants knowingly accepted and retained the benefits conferred by Nasdaq with the knowledge that these benefits represented Nasdaq's investment in the PureFunds ETFs.

79. It would contravene equity and good conscience to permit the ETFMG Defendants to retain the benefits conferred by Nasdaq, and the PureFunds ETFs and the profits they generate.

### COUNT FIVE (QUANTUM MERUIT)
**(Against Defendants Exchange Traded Managers Group and ETFMG)**

80. Nasdaq re-alleges and incorporates by reference each and every allegation in paragraphs 1–79, inclusive, as if they were fully set forth herein.

81. Pursuant to the Index Licensing Agreement, the Wholesaling Agreement, and the 40 Act Agreements, Nasdaq provided significant and valuable benefits to the ETFMG Defendants in the form of payments Nasdaq made to finance the development, launch, marketing, and operation of the PureFunds line of ETFs.

82. The ETFMG Defendants knowingly accepted and retained the benefits conferred by Nasdaq.

83. Nasdaq had a reasonable expectation that it would be compensated for the value of the benefit conferred on the ETFMG Defendants, through the profits generated by the PureFunds ETFs.

84. The ETFMG Defendants have not compensated Nasdaq for this benefit and have indicated that they will not compensate Nasdaq in the future.

85. Under the doctrine of quantum meruit, Nasdaq is entitled to receive from the ETFMG Defendants the reasonable value of the uncompensated benefit provided to the ETFMG Defendants.

## COUNT SIX (BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING)
(Against Defendants Exchange Traded Managers Group and ETFMG)

86. Nasdaq re-alleges and incorporates by reference each and every allegation in paragraphs 1–85, inclusive, as if they were fully set forth herein.

87. There is implied in every business relationship a duty of good faith and fair dealing.

88. The ETFMG Defendants have breached that duty for the reasons herein by, *inter alia*, engaging in a scheme to take Nasdaq's property and profit stream.

89. Such breaches have caused damage to Nasdaq in terms of lost property, lost profits, and the loss of prospective profits.

## PRAYER FOR RELIEF

WHEREFORE, Nasdaq respectfully requests that the Court enter a final judgment:

(a) for compensatory and punitive damages on each and every cause of action herein;

(b) for pre-judgment and post-judgment interest at the maximum rate allowed by law;

(c) for reimbursement to plaintiff for all of its attorney's fees, costs and disbursements incurred by plaintiff in this action;

(d) enjoining defendants from any involvement in the operation of the PureFunds ETFs as defined in this Complaint; and

(e) for such other and further relief as the Court deems just and proper.

Dated: New York, New York  
October 26, 2017

Ballard Spahr LLP

By: */s/ Justin W. Lamson*

Justin W. Lamson  
BALLARD SPAHR LLP  
919 Third Avenue  
New York, NY  10022  
Telephone:  212-223-0200  
Facsimile:  212-223-1942

**OF COUNSEL:**  
Stephen J. Kastenberg  
David L. Axelrod  
BALLARD SPAHR LLP  
1735 Market Street  
Philadelphia, PA  19106  
Telephone:  215-864-8639  
Facsimile:  215-864-8999

*Attorneys for Plaintiff Nasdaq, Inc.*