UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NASDAQ, INC.<br><br>                    **Plaintiff,**<br>**v.**<br><br>**EXCHANGE TRADED MANAGERS**<br>**GROUP, LLC,**<br>**ETF MANAGERS GROUP, LLC, AND**<br>**SAMUEL MASUCCI**<br><br>                    **Defendants** | **CIVIL ACTION NO. 1:17-CV-08252-PAE** |

## NASDAQ, INC.'S OPPOSITION TO DEFENDANT SAMUEL MASUCCI'S MOTION TO DISMISS THE CLAIM AGAINST HIM

Justin W. Lamson
BALLARD SPAHR LLP
1675 Broadway, 19th Floor
New York, NY  10019
Tel:  212.223.0200
Fax:  212.223.1942
lamsonjw@ballardspahr.com

Stephen J. Kastenberg*
David L. Axelrod*
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Tel:  215.665.8500
Fax:  215.864.8999
kastenberg@ballardspahr.com
axelrodd@ballardspahr.com

*Attorneys for Plaintiff Nasdaq, Inc.*

*\*Admitted pro hac vice*

i

**Table of Contents**

**Page**

I.      FACTUAL BACKGROUND ............................................................................................. 1

        A.      Nasdaq (ISE) and PureFunds Partner to Launch the PureFunds Line of
                ETFs ................................................................................................................ 1

        B.      Nasdaq (ISE) and PureFunds Hire the ETFMG Defendants to Manage the
                PureFunds ETFs .............................................................................................. 2

        C.      Masucci Concocts a Scheme to Steal the Profits Derived from the
                PureFunds ETFs .............................................................................................. 3

II.     PROCEDURAL BACKGROUND ................................................................................. 4

III.    STANDARD FOR DISMISSAL ................................................................................... 5

IV.     ARGUMENT ................................................................................................................. 6

        A.      Masucci is Liable For Conversion in His Individual Capacity and Nasdaq
                Need Not Pierce the Corporate Veil ............................................................... 6

        B.      The Allegations in the Complaint Are Sufficient to Pierce the Corporate
                Veil .................................................................................................................. 9

        C.      The Conversion Claim is Not Duplicative of the Breach of Contract Claim ....... 11

        D.      Nasdaq's Conversion Claim Should Not be Dismissed Because
                Defendants Claim There is No Contractual Right to the Profits ......................... 15

V.      CONCLUSION ............................................................................................................. 15

## TABLE OF AUTHORITIES

**Page(s)**

C ASES

*Acco, Ltd. v. Rich Kids Jean Corp.*,
No. 15 CIV. 7425 (JSR), 2017 WL 4350576 (S.D.N.Y. May 3, 2017)................................6, 7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).......................................................................................................5

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007).......................................................................................................5

*De Jesus v. Sears, Roebuck & Co.*,
87 F.3d 65 (2d Cir. 1996)..........................................................................................10, 8

*EED Holdings v. Palmer Johnson Acquisition Corp.*,
387 F. Supp. 2d 265 (S.D.N.Y. 2004)..............................................................................8

*Fabry's S.R.L. v. IFT Int'l, Inc.*,
No. 02 CIV. 9855 (SAS), 2003 WL 21203405 (S.D.N.Y. May 21, 2003)......................12, 13

*Ferreira v. Unirubio Music Publ'g*,
No. 02 CIV.805 LBS, 2002 WL 1303112 (S.D.N.Y. June 13, 2002) ............................6, 7, 9

*Jami Mktg. Servs., Inc. v. Howard*,
No. 86 CIV. 3352, 1988 WL 46106 (E.D.N.Y. Apr. 26, 1988) ................................................7

*Morris v. N.Y. State Dep't of Tax & Fin.*,
82 N.Y.2d 135 (N.Y. 1993) ......................................................................................8, 9, 10

*Moses v. Martin*,
360 F. Supp. 2d 533 (S.D.N.Y. 2004)..................................................................9, 11, 13, 14

*Paysys Int'l v. Atos SE*,
No. 14 CIV. 10105 SAS, 2015 WL 4533141 (S.D.N.Y. July 24, 2015) ..........................11, 12

*Pearson Capital Partners LLC v. James River Ins. Co.*,
151 F. Supp. 3d 392 (S.D.N.Y. 2015)....................................................................................5

*Phelps v. Kapnolas*,
308 F.3d 180 (2d Cir. 2002)..................................................................................................5

*Pilliard v. Sotheby's, Inc.*,
No. 95 CIV. 7775 (JFK), 1997 WL 381795 (S.D.N.Y. July 10, 1997) ..................................14

*Poplar Lane Farm LLC v. Fathers of Our Lady of Mercy*
    449 F. Appx. 57 (2d Cir. 2011)........................................................................12, 15

*Prudential-Bache v. Golden Larch-Sequoia,*
    118 A.D. 2d 487 (N.Y. App. Div. 1st Dept. 1986) ...................................................7

*Rubenstein v. Live Nation Entm't,*
    272 F. Supp. 3d 544 (S.D.N.Y. 2017)......................................................................9

*Ruston v. Town Bd. for Town of Skaneateles,*
    610 F.3d 55 (2d Cir. 2010).......................................................................................5

*Saunders v. Coughlin,*
    No. 92 CIV. 4289 (CSH), 1994 WL 88108 (S.D.N.Y. Mar. 15, 1994)................5, 6

*Societe d'Assurance de l'Est SPRL v. Citigroup Inc*
    No. 10 CIV. 4754(JGK), 2011 WL 4056306 (S.D.N.Y. September 13, 2011). ......8

*Strategic Growth Int'l Inc. v. Remotemdx, Inc.,*
    No. 06 CIV. 3915, 2008 WL 4179235 (S.D.N.Y. Sept. 10, 2008)...................11, 12

*Wechsler v. Hunt Health Sys., Ltd.,*
    330 F. Supp. 2d 383 (S.D.N.Y. 2004).....................................................................14

*Wells Fargo Bank, N.A. v. HoldCo Asset Mgmt., L.P.,*
    No. 16-CV-6356 (KBF), 2017 WL 2963501 (S.D.N.Y. July 11, 2017)................14

*Zinaman v. USTS New York, Inc.,*
    798 F. Supp. 128 (S.D.N.Y. 1992) ...............................................................8, 10, 11

## Other Authorities

Fed. R. Civ. P. 12(b)(6)............................................................................................5, 10

For more than five years, Nasdaq, Inc. ("Nasdaq") and its predecessor invested millions of dollars to develop and market the PureFunds line of exchange-traded funds ("ETFs") into well regarded ETFs worth tens of millions of dollars, that produced millions of dollars of fee income a year.  Then, in 2017, defendant Samuel Masucci, the co-founder and CEO of Defendants Exchange Traded Managers Group, LLC and ETF Managers Group, LLC (collectively "ETFMG Defendants"), who for a fee managed the operation of the PureFunds ETFs, orchestrated a scheme to retain the profits derived from the operation of the PureFunds ETFs for Defendants and deprive Nasdaq of that valuable property interest.  As the Complaint carefully articulates, Masucci individually took direct action to take Nasdaq's property.  For the reasons below, the Court should permit Nasdaq to seek relief against Masucci for the substantial economic harm he has caused Nasdaq.

## I.  FACTUAL BACKGROUND

### A.  Nasdaq (ISE) and PureFunds Partner to Launch the PureFunds Line of ETFs

In 2012, Nasdaq's predecessor in interest, International Securities Exchange ("ISE"), partnered with PureShares, LLC d/b/a PureFunds ("PureFunds") to develop, launch, and market a line of ETFs.[1]  Compl. ¶ 1, 18.  To effectuate this relationship, on or about June 18, 2012, ISE and PureFunds entered into a contract titled the "Index License and Exchange-Traded Product Agreement" (hereinafter "the Index License Agreement").  Compl. ¶ 19.  Pursuant to this Index License Agreement, ISE was obligated to grant PureFunds a license to use ISE's indexes and

---

[1] An ETF is a security that, like a mutual fund, tracks an index, a commodity, bonds, or a basket of assets like an index fund. Unlike a mutual fund its price changes throughout the day based on the value of the assets it is comprised of. *See* Compl. ¶¶ 14-18.  ETF sponsors like ISE make money from the management fee charged to investors (typically less than one percent) in a given ETF.  Many ETFs do not catch on with the public and lose money for their sponsors.  Others, like the PureFunds ISE Cyber Security ETF ("HACK") become very popular, and as a result of the management fee make significant amounts of money for the ETF's sponsor.

trademarks for various ETFs that ISE and PureFunds intended to create; calculate the indexes so that investors would have real-time knowledge of the index and the corresponding ETF's value; and provide financial support in connection with the creation, launch, and ongoing operation of the PureFunds ETFs.  Compl. ¶ 20.  PureFunds' obligation under the Index License Agreement was to take the necessary steps to launch the ETFs, and split the profits generated by each ETF – if any – with ISE.  Compl. ¶ 21.

**B.** **Nasdaq (ISE) and PureFunds Hire the ETFMG Defendants to Manage the PureFunds ETFs**

Neither ISE nor PureFunds conduct the day-to-day operations of ETFs, so they hired Exchange Traded Managers Group, LLC, ETF Managers Group, LLC (collectively the "ETFMG Defendants"), and its CEO and co-owner Samuel Masucci, to run the day-to-day operations of the funds and to collect and deliver the profits derived from the funds to ISE.  Compl. ¶¶ 1, 25. ETFMG marketed itself as a private label ETF issuer that helps ETF "sponsors" such as ISE and PureFunds launch and operate their ETFs.  Compl. ¶ 26.  ETFMG's marketing tagline was "YOUR ETF.  YOUR WAY."  *Id.*

ISE and ETFMG entered into three separate sets of contracts that set out ISE's responsibilities as the issuer of the PureFunds ETFs, and ETFMG's obligations as a service provider.  The Index License Agreement provided that PureFunds could, with ISE's written consent, grant a sublicense to a third-party to use ISE's indexes and trademarks.  Pursuant to this sublicense provision, ISE and PureFunds agreed to grant the ETFMG Defendants a sublicense to operate the PureFunds line of ETFs.  Accordingly, on or about December 2, 2015, ISE, PureFunds, and ETFMG entered into a "Sublicense Agreement," which: granted ETFMG a sublicense to use ISE's indexes and trademarks "in connection with the issuance, distribution, marketing and/or promotion" of the ETFs; and bound ETFMG to "all the provisions of the

[Index License Agreement], including, without limitation, those provisions imposing any obligations on PureFunds," including paying ISE the majority of the profits derived from operation of the PureFunds ETFs.  Compl. ¶¶ 27, 28.

ISE and PureFunds also entered into a number of operating agreements with the ETFMG Defendants.  Pursuant to these fund operating agreements, ISE/Nasdaq and PureFunds initially paid ETFMG approximately $30,000 to $50,000 to launch each fund, and more than $200,000 annually to operate each of the PureFunds ETFs that ETFMG managed.  Compl. ¶ 33.  And pursuant to the Sublicense Agreement and the operating agreements, ETFMG had, until mid-2017, paid ISE/Nasdaq the profits derived from these funds.  In April, 2013, ISE/Nasdaq also entered into an agreement to pay the ETFMG Defendants to conduct wholesale marketing for some of the PureFunds ETFs, and over the life of this contract, ISE/Nasdaq has paid the ETFMG Defendants and its predecessor hundreds of thousands of dollars.  Compl. ¶ 34.

In 2016, Nasdaq acquired ISE and its business developing and promoting ETFs.  By this time, ISE had spent millions of dollars to develop, launch, market, and operate the PureFunds ETFs.  Compl. ¶ 35.  Upon acquiring this business, Nasdaq continued to make substantial investments in the PureFunds ETFs.  As a result of the Nasdaq / ISE investments and efforts, three of the ETFs (SILJ, HACK, and IPAY) have generated significant profits for ISE/Nasdaq and the PureFunds ETFs are now worth tens of millions of dollars.  Compl. ¶ 40.

### C.    Masucci Concocts a Scheme to Steal the Profits Derived from the PureFunds ETFs

With HACK generating significant profits for Nasdaq, Masucci was not content to simply continue to have Nasdaq pay the ETFMG Defendants to provide the service of operating the PureFunds ETFs, and so Masucci orchestrated a scheme to divert the profits garnered from the PureFundsETFs to himself, with the ultimate goal of unlawfully exercising complete control

over the valuable ETF profit stream.  Compl. ¶¶ 41-49.  As intended by Masucci, eventually, the relationship between Nasdaq, PureFunds, and the Defendants deteriorated and Masucci took control of the PureFunds ETFs.  Compl. ¶¶ 41-49.  On May 24, 2017, Masucci sent a letter to Nasdaq and PureFunds stating that ETFMG would no longer pay Nasdaq profits from HACK, and generated a series of baseless accusations he alleged entitled him to cease paying profits generated by the ETFs and keep them for Defendants.  Compl. ¶ 44.  On June 2, 2017, Masucci sent a letter to Nasdaq and PureFunds stating that ETFMG was terminating relevant agreements for HACK, IPAY, BIGD, and the other PureFunds ETFs in sixty days for reasons in his previous letter.  Compl. ¶ 45.

After sending these letters, Masucci stopped paying Nasdaq the money it was owed under the contracts, and maintained control and dominion over the profit stream from the PureFunds ETFs, despite the fact that ISE/Nasdaq sponsored the ETFs and, along with PureFunds, were entirely responsible for paying to launch, develop, and market these ETFs.[2]  Compl. ¶¶ 49, 50.  On July 30, 2017, the ETFMG Defendants unilaterally renamed the PureFunds ETFs, and stopped paying Nasdaq the profits generated by the operation of the funds, as they had been doing for the last five years.  Compl. ¶¶ 49, 50.  The ETFMG Defendants have withheld money owed to Nasdaq in breach of the relevant contracts, and along with Defendant Masucci have also wrongfully asserted control over the PureFunds ETFs and the profits they generate.

## II.    PROCEDURAL BACKGROUND

On October 26, 2017, Nasdaq filed the Complaint stating claims for breach of contract, unfair competition, unjust enrichment, quantum meruit, and breach of the duty of good faith and

---

[2] Despite purportedly terminating these agreements as of August 2017, Nasdaq has yet to be paid the profits owed from the PureFunds ETFs from March 2017-July 2017, an amount exceeding $1.2 million.  Compl. ¶ 47.

fair dealing against the ETFMG Defendants, and for conversion against the ETFMG Defendants and Masucci.

On January 25, 2018, the ETFMG Defendants answered the Complaint and asserted Counterclaims against Nasdaq, and Masucci moved to dismiss the conversion claim.

## III.   STANDARD FOR DISMISSAL

To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Ruston v. Town Bd. for Town of Skaneateles,* 610 F.3d 55, 59 (2d Cir. 2010). The Court should only dismiss a claim if plaintiff fails to allege facts showing that it plausibly may be entitled to relief under the legal theory alleged. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

Dismissing a cause of action for failure to state a claim is improper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Phelps v. Kapnolas*, 308 F.3d 180, 184 (2d Cir. 2002) (*quoting Conley v. Gibson,* 355 U.S. 41, 45–46 (1957)). "[O]n a motion to dismiss under 12(b)(6), the trial court's function 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Saunders v. Coughlin,* No. 92 CIV. 4289 (CSH), 1994 WL 88108, at *2 (S.D.N.Y. Mar. 15, 1994) (*citing Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir. 1980)). "The court must accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. *Pearson Capital Partners LLC v. James River Ins. Co.*, 151 F. Supp. 3d 392, 399 (S.D.N.Y. 2015) (*quoting Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). "[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support

the claims." *Saunders*, at *2 (S.D.N.Y. Mar. 15, 1994) (*quoting Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)).

## IV.   ARGUMENT

Masucci argues that Nasdaq's claim against him for conversion must be dismissed because Nasdaq failed to pled sufficient allegations to "pierce the corporate veil" and the conversion claim is "duplicative" of the breach of contract claim.  Masucci's first argument ignores the body of law holding that officers are liable in their individual capacity for the torts they commit, and the second argument simply defies logic, as a sole count against one defendant cannot be "duplicative."

### A.   Masucci is Liable For Conversion in His Individual Capacity and Nasdaq Need Not Pierce the Corporate Veil

Masucci's contention that Nasdaq failed to plead factual allegations sufficient to pierce the corporate veil to find him individually liable is irrelevant.  Defendant Samuel Masucci's Memorandum of Law in Support of His Motion to Dismiss the Claim Against Him in Plaintiff's Complaint ("Mem.") at 8.  Masucci's argument fails to account for the fact that Nasdaq may sue him for conversion in his *individual* capacity, not only in his capacity as co-founder and CEO of Exchange Traded Managers Group and ETFMG.

Because Nasdaq is entitled to sue Masucci in his individual capacity, it need not allege facts sufficient to pierce the corporate veil.  *See Ferreira v. Unirubio Music Publ'g*, No. 02 CIV.805 LBS, 2002 WL 1303112, at *1 (S.D.N.Y. June 13, 2002).  "[A] corporate officer who participates in the commission of a tort may be held individually liable, regardless of whether the officer acted on behalf of the corporation in the course of official duties and regardless of whether the corporate veil is pierced."  *Acco, Ltd. v. Rich Kids Jean Corp.*, No. 15 CIV. 7425 (JSR), 2017 WL 4350576, at *12 (S.D.N.Y. May 3, 2017).  In *Ferreira*, a factually similar case,

the plaintiff sued the owner of a corporation and the corporation for breach of contract and

conversion.  *Id.*  There, like here, the defendant owner moved to dismiss on the grounds that

plaintiff failed to plead facts sufficient to pierce the corporate veil.  *Id.*  In examining the

conversion claim, the court held that the issue of piercing the corporate veil was irrelevant, since

"[u]nder New York law, 'corporate directors and officers who commit or participate in the

commission of a tort, even if it be for the corporation's benefit, can indeed be held personally

liable for any ensuing injuries . . .'"  *Id.* at *3 (citing *Van Wormer v. McCasland Truck Center,*

*Inc.,* 558 N.Y.S.2d 683 (3rd Dept 1990); *State of New York v. Shore Realty Corp.,* 759 F.2d

1032, 1052 (2d Cir. 1985)).

Likewise, in *Jami Mktg. Servs., Inc. v. Howard*, a defendant filed counterclaims against

the plaintiff corporation and two corporate officers for breach of contract, conversion, and fraud.

No. 86 CV 3352, 1988 WL 46106, at *1 (E.D.N.Y. Apr. 26, 1988).  The officers moved to

dismiss on the grounds that the complaint failed to pierce the corporate veil sufficiently to

impose personal liability on corporate officers.  *Id.*  In response, the defendant argued that its

counterclaim "does not seek to pierce the corporate veil but alleges independent tortious acts

of conversion on the part of the named defendants."  *Id.* at *2.  The court held that:

> [I]t is not necessary to address the issue of whether or not the
> [counterclaim] adequately sets forth grounds
> to pierce the corporate veil, since [defendant] contends that this is
> not the principal theory on which it rests its claim of . . . liability.
> Rather, they maintain that [the corporate officers] personally
> committed and participated in the tort of conversion.  It has long
> been established . . . that a corporate officer who commits or
> participates in a tort, even if it is in the course of his duties on
> behalf of the corporation, may be held individually liable . . . Thus
> where an officer of a corporation participates in the conversion of a
> third-party's funds he is jointly and severally liable with the
> corporation to that third-party . . .

7

*Id.* at \*3 (internal citation omitted); *see also Prudential-Bache v. Golden Larch-Sequoia*, 118
A.D. 2d 487 (N.Y. App. Div. 1st Dept. 1986) ("[T]he complaint in essence charges [defendant]
with using the corporation to convert to his own benefit funds belonging to plaintiff. This states
a cause of action for the tort of conversion against [defendant] wholly apart from the theory
of piercing the corporate veil. A claim for conversion lies against both a corporation and officers
who participate in the wrongful conversion of property.") (*citing A + B Sweden AB v. Oakley
Furniture Design Ltd.*, No. 86 CIV. 9661 (CSH), 1987 WL 7940, at \*2 (S.D.N.Y. Mar. 13,
1987)).

　　None of the cases cited by Masucci support his contention that Nasdaq's conversion
claim against Masucci should be dismissed. *EED Holdings v. Palmer Johnson Acquisition
Corp.*, 387 F. Supp. 2d 265, 271 (S.D.N.Y. 2004), involves a case where the *claim* of piercing
the corporate veil was dismissed, not a tort claim against a corporate officer. Indeed in that case,
the fraud claim against the corporate officer was not dismissed for failure to plead facts sufficient
to pierce the corporate veil. *Id.* at 275-79. *Morris v. N.Y. State Dep't of Tax & Fin.*, 82 N.Y.2d
135, 138-42 (N.Y. 1993), involves a claim by the State of New York for taxes, not a tort claim
against an individual officer of a company. *De Jesus v. Sears, Roebuck & Co., Inc.*, *Societe
d'Assurance de l'Est SPRL v. Citigroup Inc.*, and *Zinaman v. USTS New York, Inc.*, all involve
claims for liability against a defendant's corporate parent based solely on the corporate
relationship. 87 F.3d 65, 69 (2d Cir. 1996) ("[t]he Complaint . . . name[s] Sears as a defendant
solely because of its corporate relationship to Allstate."); No. 10 Civ. 4754 (JGK), 2011 WL
4056306, \*8 (S.D.N.Y. Sept. 13, 2011); 798 F. Supp. 128, 132 (S.D.N.Y. 1992). Nasdaq's case
could not be more different from the cases Masucci relies on, as its conversion claim explicitly

pleads actions Masucci took to convert Nasdaq's property interest, and does not simply rely on his status as an ETFMG officer to establish liability.[3]

Based on the foregoing it is clear that Nasdaq has adequately pled the tort of conversion against Masucci in his individual capacity.

### B.  The Allegations in the Complaint Are Sufficient to Pierce the Corporate Veil

While it is unnecessary for Nasdaq to plead allegations sufficient to pierce the corporate veil, in any event the Complaint demonstrates that Nasdaq has pled sufficient facts to do so. "Piercing the corporate veil in New York requires a showing that '(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury.'"  *Ferreira*, 2002 WL 1303112, at *1 (citing *Morris,* 82 N.Y.2d at 141.  In *Moses v. Martin*, the court held that a plaintiff successfully pierces the corporate veil by alleging that "[the corporation] acted as the alter-ego, business conduit and instrumentality of defendant. . . [and that defendant] used the proceeds . . . for personal purpose[s]."  360 F. Supp. 2d 533, 541 (S.D.N.Y. 2004).

Nasdaq's Complaint meets this standard.  The Complaint alleges that "Defendant Samuel Masucci exercised dominion and control over the ETFMG Defendants with respect to the misappropriation from Nasdaq of the PureFunds ETFs."  Compl. ¶ 68.  It also alleges that "defendants sought to seize control of the PureFunds ETFs and the profits they generate,"

---

[3] Masucci's suggestion that the claim against him is frivolous and that it therefore "may lead to sanctions" is entirely without support.  Rule 11 sanctions are justified only in "situations 'where it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands . . .' " *Rubenstein v. Live Nation Entm't*, 272 F. Supp. 3d 544, 546 (S.D.N.Y. 2017) (*quoting Stern v. Leucadia Nat. Corp.*, 844 F.2d 997, 1005 (2d Cir. 1988).  The conversion claim against Masucci is supported by applicable law and well-grounded factual allegations.

Compl. ¶ 46, which Defendants effectuated by concocting a scheme to take Nasdaq's property. Compl. ¶ 44.

Again, the cases cited by Masucci do not support the proposition that the Complaint is insufficient to pierce the corporate veil. Masucci cites *Morris* for the proposition that to pierce the corporate veil, a plaintiff like Nasdaq must plead that the defendant, "through his domination, misused the corporate form for his personal ends so as to commit a wrong or injustice . . . ." Mem. at 11 (citing 82 N.Y.2d at 143. But in *Morris*, the problem the court faced was that the underlying conduct alleged to be wrongful was negated by a "specific finding" that there was "no indication of 'fraud or wrongdoing.'" *Id.* Indeed, the court dismissed the allegation that the corporate veil was pierced only because it found the underlying conduct to be lawful and therefore no "fraud or wrong" was alleged. That is unlike our present case, where Masucci concedes that the Complaint sufficiently pleads wrongdoing by the ETFMG Defendants.

*De Jesus v. Sears, Roebuck & Co.*, cited by Masucci, also does not help his argument. In that case, the court dismissed the claim against the individual defendant because "the pleadings [were] devoid of *any* specific facts or circumstances supporting [the] assertion of [actual domination]," as the only allegation related to the individual defendant was that the fraudulent actions taken by employees were "caused by, known to and ratified by" the defendant. 87 F.3d at 70. The court held that because there was no attempt to even allege domination, the complaint failed "even the liberal standard of Rule 12(b)(6)." *Id.* That is certainly not the case here, where the Complaint pleads that Masucci sent letters to Nasdaq and PureFunds in which he leveled baseless accusations against them, exercised dominion and control over the ETFMG Defendants with respect to the misappropriation from Nasdaq of the PureFunds ETFs, and therefore acted as the later ego of the ETFMG Defendants. Compl. ¶¶ 44, 45, 68. *Zinaman v. USTS New York,*

10

*Inc.*, also cited by Masucci is irrelevant for the same reason.  There the plaintiffs pled only that the defendant "owns and controls" the corporation, which did not suffice to meet the standard of "control and dominion."  798 F. Supp. at 132.  The *Zinaman* court also noted that there was no allegation that the defendant used his control and domination to commit a legal fraud, and for that reason the claims were dismissed.  *Id.*

A straightforward reading of the Complaint shows that Nasdaq has pled sufficient facts to pierce the corporate veil.  Nasdaq alleged that Masucci "exercised dominion and control over the ETFMG Defendants with respect to the misappropriation from Nasdaq of the PureFunds ETFs." Compl. ¶ 68.  It also alleged that Masucci sent letters to Nasdaq and PureFunds purporting to terminate valid agreements based on concocted claims of Nasdaq and PureFunds' wrongdoing. Compl. ¶¶ 44, 45.  At the pleading stage, this is sufficient to survive a motion to dismiss.  *See Moses*, 360 F. Supp. 2d at 541.

## C.      The Conversion Claim is Not Duplicative of the Breach of Contract Claim

Masucci's argument that the conversion claim against him must be dismissed as duplicative of the breach of contract claim is frivolous.  Indeed, the main case Masucci cites for this proposition – *Strategic Growth Int'l Inc. v. Remotemdx, Inc.* – explicitly states that a conversion claim is not duplicative of a breach of contract claim and should not be dismissed when, as here, "defendants had a duty separate from any duties imposed by defendants' contractual obligations."  No. 06-Civ. 3915, 2008 WL 4179235, at *3 (S.D.N.Y. Sept. 10, 2008) (citation omitted).  *See also* Mem. at 8-9.

### 1.      Nasdaq has only pled the conversion claim against Masucci

While Nasdaq has pled claims for breach of contract and conversion against the ETFMG, the same cannot be said for Masucci.  The conversion claim is the only count against Masucci and therefore is not duplicative of any other count.  *See Paysys Int'l v. Atos SE*, No. 14 CIV.

11

10105 SAS, 2015 WL 4533141, at *1 (S.D.N.Y. July 24, 2015).  In *Paysys*, the plaintiffs alleged multiple claims, including breach of contract and conversion, against a number of defendants. *Id.* at *1.  The defendants moved to dismiss, in part based on the argument that the conversion claim was duplicative of the breach of contract claims.  *Id.* at *2.  The court refused to dismiss the claims on numerous grounds, including the reason that even if the breach of contract and conversion claims *are* duplicative against one set of defendants they are not necessarily duplicative against other defendants.  *Id.* at *4.  The same is true here.  Because Nasdaq has not alleged Masucci is liable on the breach of contract claim, the conversion claim against him may not be dismissed as duplicative of the breach of contract claim against the ETFMG Defendants.

### 2.     Nasdaq's conversion claim is separate and apart from its breach of contract claim

Nasdaq's conversion claim is in any event separate and apart from the breach of contract claims.  Conversion claims are duplicative of breach of contract claims and thus subject to dismissal only when all obligations sought to be enforced "arise solely out of the [a]greement" that was allegedly breached.  *Strategic Growth Int'l,* 2008 WL 4179235, at *3.  However, where there is a superior possessory interest premised on something other than the contract, a plaintiff may recover for both breach of contract and conversion.  *Fabry's S.R.L. v. IFT Int'l, Inc.*, No. 02 CIV. 9855 (SAS), 2003 WL 21203405, at *3 (S.D.N.Y. May 21, 2003) (holding that even where a contract governs the management of funds, where the funds rightfully belong to the plaintiff regardless of the contractual obligations, the defendant's retention of the funds may form the basis for both breach of contract and conversion claims).

Masucci concedes that "when a valid agreement governs the subject matter of a dispute between parties . . . conversion [claims] . . . are generally precluded, *unless based on a duty independent of the contract*."  *Poplar Lane Farm LLC v. Fathers of Our Lady of Mercy* 449 F.

App'x 57, 59 (2d Cir. 2011) (emphasis added); Mem. at 12.  It is not surprising, therefore, that in all of the cases Masucci relies on the conversion claim arose out of a right only existing by virtue of a governing contract.  This is not the case here, as Nasdaq's right to the profits from the PureFunds ETFs is based on a superior possessory right separate and apart from the contracts at issue.  Where this is the case, courts will not dismiss conversion claims as duplicative of breach of contract claims.  *Fabry's.* 2003 WL 21203405 at *3.

     *Fabry's* is particularly instructive.  In that case, the plaintiff asserted both breach of contract and conversion (among other claims) against a company which was conducting credit guarantees and management of accounts pursuant to a contract.  *Id.* at **1-2  Under that contract, the defendant was to collect accounts receivable and forward them to plaintiff, minus costs.  *Id.* Plaintiff terminated the contract when defendant failed to forward the money to plaintiff as required.  *Id.*  After termination, defendant continued to receive money from plaintiff's customers and refused to forward that money to plaintiff.  *Id.*  Upon motion to dismiss the conversion claim as duplicative of the breach of contract claim, the court held that the defendant's "continued retention of the payments collected from plaintiff's customers without authorization and in defiance of plaintiff's superior right of ownership [was] sufficient to establish conversion as an action distinct from any breach of contract claim."  *Id.* at *4.

     *Fabry's* is not an anomaly.  *Moses* is factually similar to *Fabry's* and to the present case. There the plaintiff brought an action against her manager, alleging both breach of contract and conversion.  360 F. Supp. 2d at 537-38.  Under the terms of the contract the defendant would collect payment from clients and take 20% as a fee; it was obligated by contract to remit 80% back to the plaintiff.  *Id.* at 538.  However, the defendants ultimately retained the entirety of the

funds. *Id.* The court refused to dismiss the conversion claim as duplicative of the breach of

contract claim because:

> [t]he money at issue [was] specifically identifiable as payments . . .
> for . . . services provided by [Plaintiff, who was] the rightful owner
> of this money as the provider of the services . . . [Defendant's]
> continued retention of the payments collected from plaintiff's
> customers without authorization and in defiance of plaintiff's
> superior right of ownership is sufficient to establish conversion as
> an action distinct from any breach of contract claim.

*Id.* at 541-542. *See also Wells Fargo Bank, N.A. v. HoldCo Asset Mgmt., L.P.*, No. 16-CV-6356

(KBF), 2017 WL 2963501, at *17 (S.D.N.Y. July 11, 2017) (refusing to dismiss a conversion

claim where "[t]he defendant [] owed the plaintiff two duties: a contractual duty to abide by the

payment delivery schedule set forth in the parties' agreement, and, following the termination of

the parties' contract, a common-law duty not to collect and retain monies over which plaintiff

had a superior possessory right."; *Pilliard v. Sotheby's, Inc.*, No. 95 CIV. 7775 (JFK), 1997 WL

381795, at *7 (S.D.N.Y. July 10, 1997) (rejecting motion to dismiss conversion claim on

grounds it was duplicative of contract claim).

      This set of facts is analogous to those Nasdaq has alleged here. The ETFMG Defendants

were obligated to collect profits from the funds and forward the profit, minus a deduction for

their fees, to Nasdaq and PureFunds. After terminating the relevant contracts, the ETFMG

Defendants maintained control of the entirety of the profits the ETFs generated. However,

Nasdaq has a superior possessory right to the profits generated by the funds, based on Nasdaq's

creation, development, and investment turning the PureFunds ETFs into a profit-generating asset.

Therefore, the conversion claim is not reliant on the contract claim and constitutes a separate

claim, not subject to dismissal.

**D.      Nasdaq's Conversion Claim Should Not be Dismissed Because Defendants Contend Nasdaq Has No Contractual Right to the Profits**

Finally, were the court to find that the conversion claim *is* duplicative of the breach of contract claim, it would survive dismissal for another reason: it adequately sets forth an alternative basis for relief.

*Poplar Lane Farm LLC*, relied on by Masucci for a different proposition, supports this argument.  "Under New York law, when a valid agreement governs the subject matter of a dispute between parties, claims arising from that dispute are . . . generally precluded . . . [a]lthough that principle does not apply 'where there is a bona fide dispute as to the existence of a contract or where the contract does not cover the dispute in issue . . . '" 449 F. App'x at 59 (internal and external citations omitted).  Because Defendants dispute Nasdaq's claim that the ETFMG Defendants breached contracts requiring them to pay Nasdaq the profits derived from the operation of the PureFunds ETFs, Nasdaq should be able to pursue the conversion claim as an alternative theory of relief.

**V.      CONCLUSION**

For all the reasons set forth herein, the Court should deny Masucci's motion to dismiss.


Date:  February 26, 2018                    Respectfully submitted,

                                            */s Justin W. Lamson*  _____
                                            Justin W. Lamson
                                            BALLARD SPAHR LLP
                                            1675 Broadway, 19th Floor
                                            New York, NY  10019
                                            Tel:  212.223.0200
                                            Fax:  212.223.1942
                                            lamsonjw@ballardspahr.com

                                            Stephen J. Kastenberg*
                                            David L. Axelrod*
                                            BALLARD SPAHR LLP

1735 Market Street, 51st Floor
Philadelphia, PA 19103
Tel:  215.665.8500
Fax:  215.864.8999
kastenberg@ballardspahr.com
axelrodd@ballardspahr.com
*Attorneys for Plaintiff Nasdaq, Inc.*

*\*Admitted pro hac vice*